```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                              LEXINGTON

WILLIAM HARVEY,                 )
                                )
     Plaintiff,                 ) Civil Action No. 5:05-CV-84-JMH
                                )
v.                              )
                                ) MEMORANDUM OPINION AND ORDER
LIFE INSURANCE COMPANY OF       )
NORTH AMERICA,                  )
                                )
     Defendant.                 )
                                )
```

                    **        **        **        **        **

Before the Court is the plaintiff's motion to remand [Record No. 13]. The defendant responded and the plaintiff replied. The matter is now ripe for review.

### Factual Background

Plaintiff, a former equipment design manager at Osram Sylvania, Inc. ("Sylvania"), filed a complaint in Scott Circuit Court against the defendant, Life Insurance Company of North America ("LINA"), for nonpayment of long-term disability insurance. Sylvania made available to its employees long-term group disability insurance, policy number LK-30043, that was paid for by the employees. Sylvania also offered short-term disability insurance, policy number LK-30044, that was paid by Sylvania. Sylvania's insurance carrier for both policies was LINA. Plaintiff voluntarily purchased the long-term disability insurance offered by Sylvania.

Plaintiff's complaint states that he applied for and received

short-term disability benefits after removal of a herniated disc. Plaintiff then applied for long-term benefits, but LINA denied his application. During the administrative appeal process, LINA asserted that the plaintiff was denied benefits because the submitted medical information supported that the plaintiff was able to continue in his occupation through the applicable waiting period.

Plaintiff's complaint states claims against LINA for 1) wrongful denial of benefits pursuant to the insurance policy, 2) bad faith denial, and 3) breach of fiduciary duty. The complaint states, "The policy at issue does not meet the qualifications of an Employee Retirement Income Security Act ["ERISA"] plan." (Pl.'s Compl. at ¶ 17.) It also states, "In the alternative to allegation number 17, the actions of the [d]efendant violate [ERISA] and the provisions set forth in the summary plan description provided to Plaintiff, with said violations constituting a breach of fiduciary duty." (*Id*. at ¶ 18.)

On March 4, 2005, LINA removed the action to this Court arguing that "the Complaint attempts to state a claim for the recovery of benefits under ERISA or to enforce alleged rights under an employee benefits plan." (Def.'s Notice of Removal at ¶ 9.) LINA argues that ERISA provides United States district courts with exclusive jurisdiction over violations of ERISA and that although not stated specifically, Plaintiff's complaint essentially sets

forth a violation of section 1132(a)(1)(B) for wrongful denial of ERISA-governed employee welfare benefits. Thus, the defendant argues, the action is removable pursuant to §§ 1441(a), 1331, and 1337(a), because it arises under the laws of the United States.

Plaintiff's motion to remand argues that the defendant has failed to show that the policy at issue is part of an ERISA plan and, therefore, the complaint does not state any claims that arise under ERISA.

## Standard of Review

Removal to federal court from state court is proper for "[a]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]" 28 U.S.C. § 1441(a). The defendants argue that the Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because the complaint states claims that arise under federal law.

According to the well-pleaded complaint rule, the face of Plaintiff's complaint must state claims that arise under federal law in order for federal courts to have jurisdiction pursuant to section 1331. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10 (1983). Plaintiff's cause of action arises under federal law if "federal law creates the cause of action", *Id.* at 27-28, or, if the action is a state claim, "when Congress expressly so provides, . . . or when a federal statute wholly displaces the state-law cause of action through complete pre-

3

emption."[1] *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). For purposes of removal, if there is complete pre-emption, then the state law complaint is converted to one arising under federal law and satisfying the well-pleaded complaint rule. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987).

The fact that there is a pre-emption defense, by itself, does not transform a state action to a federal action for purposes of subject matter jurisdiction. *Id.* at 393. In fact, "preemption and complete preemption are distinguishable concepts." *Wright v. GMC*, 262 F.3d 610, 614 (6th Cir. 2001). Under ERISA's traditional pre-emption provision, section 1141, a state law claim is pre-empted by ERISA and, thus, foreclosed in either federal or state court, if the claim *relates to* matters governed by ERISA. *Id.*

A claim is *completely* pre-empted by ERISA, on the other hand, if the state law claim could be brought pursuant to ERISA's enforcement provision, section 1132(a)(1)(B). *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 65-67 (1987) (holding that section 1132(a)(1)(B) of ERISA completely pre-empts state claims for improper processing of benefits under an ERISA plan). Section 1132 of ERISA provides,

---

[1] Throughout the opinion, the Court uses a dash in the word "pre-emption" because the Supreme Court and the Oxford English Dictionary utilize a dash. The Court notes that some quotations in the opinion containing the word "pre-emption" do not utilize a dash because the Court wishes to stay true to the particular court's quotation.

4

>(a) A civil action may be brought--
>(1) by a participant or beneficiary--
>(A) for the relief provided for in subsection (c) of this section, or
>(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>
>. . .
>
>(c) Administrator's refusal to supply requested information; penalty for failure to provide annual report in complete form . . . .

29 U.S.C. § 1132. Thus, in order to be completely pre-empted, the state law claim must be one to recover benefits due to the plaintiff under the policy, to enforce his rights under the policy, or to clarify rights to future benefits under the policy. *Wright*, 262 F.3d at 614. Complete pre-emption provides removal jurisdiction because the state law claims are re-characterized as claims arising under ERISA. *Metro. Life*, 481 U.S. at 64.

**Analysis**

**A. Wrongful Denial of Benefits and Breach of Fiduciary Duty Claims**

The plaintiff argues that the long-term disability policy is not enforceable under section 1132 of ERISA and, thus, not completely pre-empted, because the policy at issue is not an ERISA welfare benefit plan. Pursuant to ERISA, "welfare benefit plans" are defined as follows:

>1) The terms "employee welfare benefit plan"

5

> and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186 of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1102(a).

Plaintiff's state law claim for wrongful denial of benefits squarely falls within section 1132(a)(1)(B) of ERISA as a claim seeking to enforce rights under the terms of the plan and is completely pre-empted pursuant to *Metropolitan Life* if the long-term disability policy is an ERISA "employee welfare benefit plan." *See Metro. Life*, 481 U.S. at 65-67 (holding that claim for wrongful denial of benefits fell was enforceable under section 1132(a)(1)(B) and was thus completely pre-empted by ERISA). The Sixth Circuit has extended the principle of *Metropolitan Life* to state law claims for breach of fiduciary duty, finding that these claims are also completely pre-empted. *Smith v. Provident Bank*, 170 F.3d 609, 613-14 (6th Cir. 1999) (converting state law fiduciary duty claim into an ERISA claim under section 1132(a)(2)).

The Sixth Circuit developed a three-part test to determine

whether a plan is considered an ERISA welfare benefit plan.

> First, the court must apply the so-called safe harbor regulations established by the Department of Labor ["DOL"] to determine whether the program was exempt from ERISA. Second, the court must look to see if there was a plan by inquiring whether from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits. Finally, the court must ask whether the employer established or maintained the plan with the intent of providing benefits to its employees.

*Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 434-35 (6th Cir. 1996) (internal citations and quotations omitted). The DOL safe harbor exemptions that must be analyzed for the first prong of the *Thompson* test provide that an employee insurance policy is excluded from ERISA if:

> (1) No contributions are made by an employer . . .
> (2) Participation in the program is completely voluntary for employees . . .
> (3) The sole functions of the employer . . . with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees . . ., to collect premiums through payroll deductions . . .[,] and to remit them to the insurer; and
> (4) The employer . . . receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions . . . .

29 C.F.R. § 25120.3-1 (j) (2005). In order for the plan to be exempt under the regulations, all four criteria must be satisfied.

7

The defendant does not contest that criteria one, two, and four are met and, instead, focuses its argument on criteria three, whether Sylvania endorsed the long-term disability plan. Accordingly, the Court will focus its analysis on endorsement.

Whether Sylvania endorsed the policy is a mixed question of law and fact. In *Johnson v. Watts Regulator Co.*, 63 F.23d 1129 (1st Cir. 1995), cited approvingly by the Sixth Circuit in *Thompson,* the First Circuit noted that "[i]n some cases the evidence will point unerringly in one direction so that a rational factfinder can reach but one conclusion. In those cases, endorsement becomes a matter of law." *Id.* at 1135 n.3. In others, however, "the legal significance of the facts is less certain, and the outcome will depend on the inferences that the factfinder chooses to draw." *Id.* The burden is on the party asserting that the Court has jurisdiction, in this case the defendant, to prove by a preponderance of the evidence that the jurisdictional facts alleged in support of removal are sufficient to find jurisdiction. *Nat'l Mgmt Ass'n v. Transamerica Fin. Res.*, 197 F. Supp. 2d 1016, 1018 (S.D. Ohio 2002).

In *Thompson*, the Sixth Circuit discussed endorsement at length and held that "a finding of endorsement is appropriate if, upon examining all the relevant circumstances, there is some factual showing on the record of substantial employer involvement in the creation or administration of the plan." *Thompson*, 95 F.3d at 436.

8

The court held that "the relevant framework for determining if endorsement exists is to examine the employer's involvement in the creation or administration of the policy from the employees' point of view." *Id.* at 436-37.  The court noted several facts which are indicative of endorsement, "[f]or example, where the employer plays an active role in either determining which employees will be eligible for coverage or in negotiating the terms of the policy or the benefits provided thereunder, the extent of employer involvement is inconsistent with 'employer neutrality' and a finding of endorsement may be appropriate." *Id.* at 436.  The court also held that "where the employer is named as the plan administrator, a finding of endorsement may be appropriate." *Id.* Further, "where the employer provides a summary plan description that specifically refers to ERISA in laying out the employee's rights under the policy or that explicitly states that the plan is governed by ERISA, the employee is entitled to presume that the employer's actions indicate involvement sufficient to bring the plan within the ERISA framework." *Id.* at 437.

In support of the defendant's arguments concerning endorsement, the defendant submitted Exhibit B, which the defendant claims is the summary plan description for the long-term disability policy at issue in the complaint.  Exhibit B is consecutively numbered 1-31.  The front cover is entitled "Group Insurance Plan" and has Sylvania's name on the bottom.  Page 26 is entitled

9

"Supplemental Information for Osram Sylvania Employee Welfare Plan." (Def.'s Ex. B, AR at 742.)

The defendant argues that Sylvania endorsed the long-term disability policy because the company's name was on the cover of the summary plan description and in the supplemental information, the plan is referred to as the "Osram Sylvania Employee Welfare Plan" and "Osram Sylvania Inc.'s Insurance Plan." (*Id*. at 743 & 771.) Also, the summary plan description states that the company serves as Plan Administrator, who "has the authority to control and manage the operation and administration of the Plan. The Plan Administrator may terminate, suspend, withdraw or amend the Plan, in whole or in part, at any time, subject to the applicable provisions of the Policy." (*Id*. at 772.) Finally, the defendant argues that the employer endorsed the plan because the summary plan description states that "[a]s a Plan participant, ERISA gives you certain rights and protection." (*Id*.) It then sets out the employee's rights pursuant to ERISA. (*Id*. at 772-76.)

The plaintiff, on the other hand, argues that Sylvania did not endorse the plan because the premiums were paid by the employees with after-tax dollars, claims were filed directly to LINA with no involvement from Sylvania, the company did not receive compensation for offering the plan to its employees, Sylvania did not take an active role in the creation or administration of the plan, and the policy specifically states that state law should apply to disputes.

10

Plaintiff also argues that the defendant's Exhibit B is not the "summary plan description" for the long-term disability policy and, instead, is only certificate of insurance. Further, Plaintiff argues that the supplemental information that the defendant asserts is part of the summary plan description in Exhibit B does not apply to the long-term disability policy because the Plan Number is stated as "501", which is the Plan Number for the *short-term* disability plan.

First, the Court finds that the defendant's Exhibit B is the "summary plan description" for the long-term disability policy at issue in the complaint. Exhibit B is a two-part document that contains an insurance certificate and supplemental information. The certificate portion of Exhibit B states that the policy issued to Sylvania is LK-030043, the policy number listed in the complaint, and after the table of contents, the pages are listed 1-25. The supplemental information begins on page 26 and ends on page 31, and states that the policy number is LK-030043, the same number listed in the complaint and in the insurance certificate. The supplemental information also states that "[t]he Certificate, along with the following Supplemental Information, makes up the Summary Plan Description as required by ERISA." (*Id*. at 771.) Further, the supplemental information sheet states that the plan is financed by the employees. If the supplemental information applied to the short-term disability plan instead of the long-term

11

disability plan, it would have to indicate that the plan is financed by the employer, as it does in Plaintiff's Exhibit 5. (*Id*. at 736.) Although the supplemental information sheet states that the Plan Number is 501, the defendant submitted evidence in the form of a letter from *Sylvania* to the plaintiff that states that the Plan Number was a typo. Therefore, the Court finds that the defendant's Exhibit B is the "summary plan description" for the long-term disability policy at issue in the complaint.

Having found that the document submitted by the defendant is the summary plan description for the long-term disability policy at issue in the complaint, the Court further finds that based on the submitted evidence, a reasonable employee of Sylvania would find that Sylvania endorsed the long-term disability plan. Despite the fact that Sylvania did not have any involvement in claims processing or determining eligibility, which supports a finding that Sylvania did not endorse the plan, all the other facts mentioned in *Thompson* indicating endorsement are present. For example, Sylvania's name is printed on the cover of the summary plan description and the supplemental information states that the information is for the "Osram Sylvania Employee Welfare Plan." *Ackerman v. Fortis Benefits Ins. Co.*, 254 F. Supp. 2d 792, 808-09 (S.D. Ohio 2003) (finding important to the endorsement analysis that the employer's name was identified in the plan name).

Further, the supplemental information states that the Plan

12

Administrator is Sylvania and that Sylvania "has authority to control and manage the operation and administration of the Plan." Additionally, it states that "the Plan Administrator may terminate, suspend, withdraw or amend the Plan, in whole or in part, at any time, subject to the applicable provisions of the Policy." *Thompson*, 95 F.3d at 436 ("where the employer is named as the plan administrator, a finding of endorsement may be appropriate"); *accord*, *Wausau Benefits v. Progressive Ins. Co.*, 270 F. Supp. 2d 980, 987 (S.D. Ohio 2003) (2003); *Nicholas v. Standard Ins.* Co., No. 00-1728, 2002 WL 31269690, at *5 (6th Cir. 2002) (discussing *Thompson* and stating that the applicable factors are the employer's involvement in the creation and negotiation of terms of the policy, whether the employer was the plan administrator, and whether the summary plan description refers to ERISA).

Finally, and most important, the supplemental information specifically mentions ERISA, sets out the employees' rights under ERISA, and notes that questions concerning the plan should be directed to the Plan Administrator, all facts noted by courts as indicating that a plan was endorsed by the employer. *Johnson,* 63 F.3d. at 1136 (noting that none of the plan documents mentioned ERISA in finding that the employer did not endorse the plan); *Thompson*, 95 F.3d at 437 ("[W]here the employer provides a summary plan description that specifically refers to ERISA in laying out the employee's rights under the policy . . . the employee is

13

entitled to presume that the employer's actions indicate involvement sufficient to bring the plan within the ERISA framework."); *accord*, *Adams v. UNUM Life Ins. Co. of Am.*, 200 F. Supp. 2d 796, 800-01 (N.D. Ohio 2002).

Therefore, because the Court finds that Sylvania endorsed the long-term disability policy, the policy is an "employee welfare benefit plan" covered by ERISA's enforcement mechanism.[2] Consequently, Plaintiffs' state law claims for wrongful denial of benefits and for breach of fiduciary duty are construed for purposes of removal jurisdiction as arising under ERISA. *See Ackerman,* 254 F. Supp. 2d at 818 (holding that for claims that are completely pre-empted, dismissal is improper and leave to amend the complaint is unnecessary because "as demonstrated by its complete preemption argument, [the defendant] is fully aware of the ERISA claim set forth by [the plaintiff]").

**B. Bad Faith Claim**

The Supreme Court has held that bad faith claims for wrongful

---

[2] Having found that Sylvania endorsed the long-term disability plan, the defendant has shown that the plan does not fall within the DOL exemptions from ERISA. The second and third prongs of the *Thompson* test require the Court to determine whether there was a "plan" by looking at whether "a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits." *Thompson*, 95 F.3d at 435. The third prong requires the Court to determine whether the employer "established or maintained the plan with the intent of providing benefits to its employees." *Id.* (internal quotations omitted); *Anderson v. UNUM Provident Corp*., 369 F.3d 1257, c (11th Cir. 2004). It appears prongs two and three are not contested by the parties because neither side briefed them.

14

denial of benefits are subject to traditional pre-emption, but the Court has not specifically addressed whether a bad faith claim is *completely* pre-empted by ERISA for purposes of federal jurisdiction and characterization of the claim. In *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41 (1987), however, the Supreme Court found that a Mississippi bad faith claim was *traditionally* pre-empted even though there was not a similar remedy available under ERISA's enforcement mechanism, section 1132. *Id.* at 53-54. A district court within the Sixth Circuit has held that bad faith claims are not *completely* pre-empted for purposes of establishing jurisdiction, but should be dismissed under traditional pre-emption principles. *Ackerman*, 254 F. Supp. 2d at 818 n. 26. Because a claim must be subject to enforcement under section 1132(a) of ERISA in order to be completely preempted and the Supreme Court has stated bad faith claims are not enforceable under section 1132, the Court refuses to extend the complete pre-emption principle to this claim.

Pursuant to § 1367, the Court asserts supplemental jurisdiction over the plaintiff's bad faith claim, but notes however, that this claim is likely subject to dismissal under traditional pre-emption principles. *See Pilot Life*, 481 U.S. at 54-56 (holding that bad faith claim was "undoubtedly" preempted by ERISA); *Mass. Cas. Ins. Co. v. Reynolds,* 113 F.3d 1450, 1454 (6th Cir. 1997) ("The Supreme Court has expressly held that bad faith

15

claims for improper processing of claims 'undoubtedly meet the criteria for pre-emption' under ERISA.") (quoting *Pilot Life*, 481 U.S. at 48).

## Conclusion

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

(1) That the plaintiff's motion to remand [Record No. 13] be, and the same hereby is, **DENIED.**

(2) That for the remainder of the litigation, the plaintiff's complaint is re-characterized so that the wrongful denial of benefits and breach of fiduciary duty claims are construed as ERISA claims and the bad faith claim is characterized as arising under state law.

This the 13th day of December, 2005.



Signed By:
*Joseph M. Hood*
United States District Judge